UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JERRI LEIGH JACKSON,            )
                               )
    Plaintiff,              )
                               )
        v.              )    NO.  3:08-0743
                               )
SWIFT TRANSPORT CO., et al.,   )    Judge Echols/Bryant
                               )
    Defendants.             )

**TO: The Honorable Robert L. Echols**

### REPORT AND RECOMMENDATION

Defendant Swift Transportation Co.[1] has filed its motion for summary judgment (Docket Entry No. 186), supported by excerpts from plaintiff's discovery deposition and the affidavits of Donald Diggins, Tracey Blocker, Tim McLain and Scott Maldonado (Docket Entry No. 187).

Plaintiff has filed her response in opposition (Docket Entry Nos. 209 and 210).

Defendant's motion has been referred to the undersigned for report and recommendation pursuant to Rule 72, Federal Rules of Civil Procedure (Docket Entry No. 5).

For the reasons stated below, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and the complaint **DISMISSED**.

---

[1]Although plaintiff named as defendants three entities – Swift Transport, Swift Medical Team and Swift Training – defendant Swift Transportation Co., Inc. has asserted that "Swift Medical Team" and "Swift Training" do not exist as independent legal entities (Docket Entry No. 40, n. 1).

## Statement of the Case

Plaintiff Jerri Leigh Jackson, proceeding <u>pro se</u> and <u>in forma pauperis</u>, has filed her complaint alleging employment discrimination based upon "age, sex, retaliation, disability, religion" (Docket Entry No. 1). Plaintiff apparently bases her claims on Title VII, 42 U.S.C. § 2000e <u>et seq.</u>, the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u>, and/or the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et seq.</u> Plaintiff seeks money damages and equitable relief.

Defendants have now filed their motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. As grounds for this motion, defendant Swift asserts that there exists no genuine issue of material fact regarding the elements of plaintiff's claims and that defendant Swift is entitled to judgment as a matter of law.

Plaintiff has filed her response in opposition.

## Standard of Review

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Rule 56(e)(1) provides:

A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be

2

> admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If a genuine issue of material fact exists, summary judgment is inappropriate. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### Summary of Pertinent Facts

This case arises from plaintiff Jackson's effort to obtain employment as a truck driver with defendant Swift Transportation in April 2007.

3

Swift Transportation is a trucking company that transports freight for its customers, subject to all federal requirements applicable to motor carriers (Docket Entry No. 187-5). Swift operates a driver training academy in Millington, Tennessee. This academy offers a 23-day driver training program open to all persons, including but not limited to individuals interested in driving for Swift. (Id.). All participants in Swift's driving training programs must pass, among other requirements, a physical examination mandated by the Department of Transportation and additional physical assessments designed to measure one's fitness to drive a commercial motor vehicle. (Id.) Application to a Swift driver training academy does not guarantee employment with Swift Transportation. Participants who successfully complete the academy training program, meet all federal requirements, obtain a commercial driver's license, and meet all company requirements for the position of truck driver become eligible for employment as a Swift driver. (Id.)

After completing a course of driver training at Volunteer Training Center, a truck driving school in Murfreesboro, Tennessee, plaintiff Jackson on April 25, 2007, sought admission to the driver training program at the Swift training academy in Millington. As part of the admission procedures, applicants were required to complete a medical examination and physical assessments administered at the Swift terminal in Memphis, Tennessee, by

4

employees of WorkWell, a company hired by Swift for that purpose (Docket Entry No. 187-6). Among other physical assessments, applicants had to demonstrate the ability to lift 85 pounds to be eligible to drive a flatbed truck, and 75 pounds to be eligible to drive a van. (Id.)

Plaintiff Jackson testified in her deposition that she provided the medical examiners, Jessica Rhodes and Hope Haley, a copy of a letter from plaintiff's doctor, Dr. Roger Dmochowski, stating that she was subject to a 50-pound lifting restriction resulting from prior urological surgery (Docket Entry No. 187-1, pp. 4-7; Docket Entry No. 209, p. 21; Docket Entry No. 210, p. 19). Plaintiff informed Ms. Rhodes and Ms. Haley that, to her knowledge, the 50-pound lifting restriction remained in effect as of April 2007 when she sought admission to the Swift driver training academy (Docket Entry No. 187-1, pp. 9-10).

Plaintiff testified that Ms. Rhodes informed her that unless plaintiff could obtain a cancellation of the 50-pound weight restriction from her doctor, the 50-pound limit would cause her to fail this physical assessment (Docket Entry No. 187-1, pp. 14-15). Following further discussion, Ms. Rhodes agreed to permit plaintiff to fax Dr. Dmochowski's office at Vanderbilt University Medical Center a request that he cancel his previously imposed weight restriction on plaintiff. Ms. Rhodes completed a fax cover sheet addressed to Dr. Dmochowski and a request form stating in part:

5

"assessment [without] restriction needed post surgery;" and "need current [illegible] allowing pt to perform activities without any limitation, must lift 85 lbs & drive vehicle (18 wheeler) [without] restrictions." (Docket Entry No. 145, p. 17). The fax cover sheet stated: "Please fax back ASAP." (Id.) Plaintiff testified that after this fax was sent Ms. Rhodes told her that she could wait by the fax machine for the response, and that Ms. Rhodes gave plaintiff a telephone to call her doctor (Docket Entry No. 187-1, p. 15).

Although precise times do not appear in the record, plaintiff testified that later on April 25 while she was waiting by the fax machine for Dr. Dmochowski's response, she was informed by Tracey Blocker, a Swift employee, that she had "flunked" the physical assessment and that she would be required to leave (Docket Entry No. 187-1, p. 21). Plaintiff protested and informed Ms. Blocker that Ms. Rhodes had permitted plaintiff to wait by the fax machine for the response from her doctor's office. (Id.) Plaintiff testified that Ms. Blocker left briefly and walked down the hall toward the medical exam room, but soon returned to where plaintiff was standing. Ms. Blocker repeated that plaintiff needed to leave and, when plaintiff protested, plaintiff testified that Ms. Blocker

6

"took [her] by the arm," and escorted her out the door. (Id. at pp. 21-22).[2]

Plaintiff testified that she "became so mad [she] couldn't even see straight."

> I – I was – and I started screaming at that point
> outside the exterior of that building. I let
> everybody know what kind of pain I was in. And I
> started screaming for rights to re-enter. I
> started banging on doors.

(Docket Entry No. 187-1, pp. 21-23). Although the record fails to state precisely what happened next, it appears that plaintiff Jackson was provided with a bus ticket to return to her home in Kentucky and transportation to the bus station, in keeping with Swift policy (Docket Entry No. 187-4, para. 10).

From the record, it appears that plaintiff's physician did not respond to the subject fax request until nine days later, on May 4, 2007 (Docket Entry No. 187-1, p. 18; Docket Entry No. 187-3, p. 10). What is believed to be Dr. Dmochowski's signature appears on the line designated "physician signature," but the doctor in this response fails to make any explicit reference to the 50-pound lifting restriction or his willingness to cancel or modify it.

---

[2]Ms. Blocker in her affidavit states that she was employed by Swift as an orientation administrator at the Memphis terminal in April 2007. She further testified that she does not specifically recall encountering a female student named Jerri Jackson, and that she denies ever having abused or physically harmed any of the students in a training class (Docket Entry No. 187-4).

## Analysis

Sex and religious discrimination. Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to fail or refuse to hire any individual because of such individual's sex or religion. In the absence of direct evidence of discrimination, claims under Title VII are analyzed under a burden-shifting framework. Plaintiff has the initial burden of demonstrating a *prima facie* case of employment discrimination by establishing the following four elements:

> (1) that she belongs to a protected class; (2) that she was qualified for the job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected, and (4) that, after her rejection, the employer continued to seek applicants from persons of plaintiff's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1979). If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection. Id. If the employer proffers such a reason, the burden swings back to the plaintiff to show that the proffered reason is a pretext for illegal discrimination. McDonnell Douglas, 411 U.S. at 804.

Disability discrimination. Claims of disability discrimination under the ADA are analyzed under a similar burden-shifting scheme. The plaintiff has the initial burden of demonstrating a *prima facie* case by showing that:

> (1) she was "disabled" under the ADA; (2) she was
> otherwise qualified to perform the essential
> functions of the job, with or without reasonable
> accommodations; (3) she suffered an adverse
> employment action; (4) the employer knew or had
> reason to know of the plaintiff's disability; and
> (5) a nondisabled person replaced her.

Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008) (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996)).  In a fashion similar to the McDonnell Douglas burden-shifting analysis, if a plaintiff establishes the elements of a *prima facie* case of disability discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Id. If the employer does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for illegal discrimination.  Id.

Age discrimination.  The ADEA makes it illegal for an employer to discriminate against an individual because of such individual's age.  29 U.S.C. § 623(a)(1).  To prevail, a plaintiff bringing an age discrimination case "must prove that age was a determining factor in the adverse action that the employer took against him or her."  Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir. 1993).  In the absence of direct evidence of age discrimination, claims under the ADEA are analyzed under the McDonnell Douglas burden-shifting framework applicable to Title VII cases.  To establish a *prima facie* case of age discrimination, a

9

plaintiff bears the initial burden of demonstrating that: (1) she was at least 40 years of age at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person. <u>Cooley v. Carmike Cinemas, Inc.</u>, 25 F.3d 1325, 1329 (6th Cir. 1994). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> If the employer meets this burden of articulation, the burden shifts back to the plaintiff to show that the reason proffered by the employer was not its true reason but instead a pretext for illegal discrimination. <u>Id.</u>

<u>Retaliation</u>. Title VII makes it an unlawful employment practice for an employer to discriminate against any individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[3]

---

[3]Although not mentioned in her complaint, plaintiff in a number of her later filings has mentioned the "Torture Victim Protection Act of 1991" as if she intends to assert that her alleged mistreatment by defendant Swift amounted to torture sufficient to state a claim under this statute. This enactment, Pub.L. 102-256, Mar. 12, 1992, 106 Stat. 73, established a cause of action against any person who, acting "under actual or apparent authority, or color of law, of any foreign nation," subjects an individual to torture. 28 U.S.C. § 1350 (note).

10

Defendant Swift in its motion argues that, based upon undisputed facts, (1) plaintiff cannot demonstrate a *prima facie* case of employment discrimination under Title VII, the ADA or the ADEA because she is unable to establish an essential element of a claim under all three statutes — that she was qualified for the job she sought, and (2) assuming she succeeded in establishing a *prima facie* case, plaintiff's failure to satisfy the 75-pound lifting requirement was a legitimate, nondiscriminatory reason to deny her admission to the driver training program.

In her response to Swift's motion, plaintiff has offered no legal analysis or real challenge to the substantive facts summarized above — most of which are premised on her own deposition testimony. Instead, plaintiff has filed copies of the title pages of her deposition transcript upon which she has written "illegal & fraudulent," "erratic reportings — incomplete information," "taken out of context," and other similar comments. In addition, plaintiff has filed a large number of copies of various documents, almost all unsworn, many containing inadmissible hearsay, and most of which appear to this Magistrate Judge to be irrelevant to the issues raised by defendant Swift's motion.

From a review of the record, the undersigned Magistrate Judge finds the following facts to be undisputed. Plaintiff Jackson

---

Since this statute applies only to persons acting on behalf of "any foreign nation," it has no application to this case.

11

undeniably had no experience as a commercial truck driver. She sought to enroll as a student in the driver training academy operated by defendant Swift in an effort to become eligible for employment by Swift as a commercial truck driver. Plaintiff admits in her deposition that on April 25, 2007, when she appeared in Memphis for her medical exam and physical assessment required for admission to the Swift driver training academy, she presented the examiners with an October 6, 2006, letter from her physician imposing a 50-pound lifting restriction. Plaintiff has testified that, to her knowledge, this lifting restriction imposed by her doctor approximately seven months earlier remained in effect. The medical examiners informed plaintiff that unless her doctor were willing to eliminate this lifting restriction, it would cause her to fail the physical assessment requiring that she demonstrate the ability to lift at least 75 pounds. The examiner faxed to plaintiff's doctor in Nashville a request that he cancel this weight restriction and that he respond by return fax "ASAP." It is undisputed that plaintiff's doctor did not respond until nine days later, on May 4, long after plaintiff had returned to her home in Kentucky.

With respect to plaintiff's claim that defendant Swift rejected her in retaliation for her filing EEOC charges and

12

employment discrimination lawsuits against other employers,[4] there is no evidence in this record that Swift knew of those charges and suits, or that such knowledge influenced any decision regarding plaintiff. In her deposition plaintiff testified that she did not inform Swift of these charges and lawsuits (Docket Entry No. 187-1, pp. 30-34). Her belief that someone at Volunteer Training Center likely provided Swift with such information appears to be an assumption based only upon unfounded speculation. (Id.) Similarly, there appears to be no evidence to support plaintiff's claim of religious discrimination. Plaintiff testified that she told no one at Swift that she was an "excommunicated Mormon," and that, had they inquired about her religious preference on the application, she would have responded "Southern Baptist." (Docket Entry No. 187-1, pp. 27-28).

In summary, the undersigned Magistrate Judge finds from the undisputed facts that plaintiff Jackson failed to demonstrate that she was qualified for the job she sought by lifting at least 75 pounds. Further, plaintiff has offered no evidence that Swift accepted other applicants of a different age, sex or religion who, similarly, failed to satisfy this lifting requirement. Therefore, the undersigned Magistrate Judge finds that plaintiff has not established a *prima facie* case of employment discrimination against

---

[4]It appears that plaintiff has filed at least eleven other lawsuits in this district and other jurisdictions, many alleging employment discrimination (Docket Entry No. 188, p. 2 n.3).

defendant Swift.  Moreover, the Court finds that plaintiff has failed to carry her burden of showing that Swift's proffered reason for rejecting her — that she failed the required physical assessment of lifting at least 75 pounds — was actually a pretext for illegal discrimination.  Finally, the Court finds no evidence suggesting that defendant Swift rejected plaintiff in retaliation for her EEOC charges and lawsuits against other employers.

For the above reasons, the undersigned Magistrate Judge finds that there is no genuine issue of material fact for trial and that defendant Swift is entitled to judgment as a matter of law.

## **RECOMMENDATION**

For the reasons stated above in this report, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and the complaint **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.

14

<u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986).

**ENTERED** this 17th day of March 2010.

<u>s/ John S. Bryant</u>
JOHN S. BRYANT
United States Magistrate Judge

Case 3:08-cv-00743   Document 214   Filed 03/17/10   Page 15 of 15 PageID #: 3462