UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRI LEIGH JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-0743 |
| ) | Judge Echols |
| SWIFT TRANSPORT, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff, pro se, filed this employment discrimination action on August 4, 2008 against Defendants Swift Transport, Swift Medical Team, and Swift Training (collectively "Swift Transport") after she was unable to participate in a training program for truck drivers offered by Swift Transport. In refusing to allow her to participate in the program, Plaintiff claims Swift Transport engaged in age, sex, religious and disability discrimination, as well as retaliation.

The parties have filed Cross-Motions for Summary Judgment, and the Magistrate Judge has issued two Reports and Recommendations in relation thereto. In the first R & R (Docket Entry No. 189) the Magistrate Judge recommends denying Plaintiff's Motion for Summary Judgment (Docket Entry No. 145). In the second R & R (Docket Entry No. 214), the Magistrate Judge recommends granting Defendants' Motion for Summary Judgment (Docket Entry No. 186). Plaintiff has filed Objections to both R & R's (Docket Entry Nos. 204 & 223) to which Defendants' have responded (Docket Entry No. 225), as well as a "Motion to Compel Sealments" (Docket Entry No. 222).

### I. R & R's ON SUMMARY JUDGMENT MOTIONS

The Magistrate Judge ruled that Plaintiff's sex and religious discrimination claims appear to be brought under Title VII, 42 U.S.C. § 2000e *et seq.*, her age claim under the Age Discrimination

1

in Employment Act, 29 U.S.C. § 621 *et seq.*, and her disability claim under the Americans With Disabilities Act, 29 U.S.C. § 12101 *et seq.* The Magistrate Judge recognized that such claims are analyzed under the familiar burden-shifting paradigm set forth in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).

Under the paradigm, Plaintiff must establish a *prima facie* case that (1) she is a member of a protected class; (2) that she was qualified for the position she sought; (3) that she was rejected; and (4) that the employer continued to seek applications, or someone outside the protected class was offered the position.[1] If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action and, if the employer does so, the burden shifts back to the Plaintiff to show that the stated reasons for the employer's action is a pretext for discrimination.

In this case, the Magistrate Judge found Plaintiff could not establish a *prima facie* case of discrimination and further that, even if she could make such a showing, Swift Transport articulated a legitimate non-discriminatory reason for its refusal to allow Plaintiff to continue in its training program. Specifically, the Magistrate Judge wrote:

> Among other physical assessments, applicants to participate in the driver training must demonstrate the ability to lift 85 pounds to be eligible to drive a flatbed truck and 75 pounds to be eligible to drive a van. On April 25, 2007, Jackson informed the medical examiners, Jessica Rhodes and Hope Haley, that she was subject to a 50-pound lifting restriction imposed by her doctor, Dr. Roger Dmochowski, as a result of prior urological surgery. The medical examiners informed Jackson that this doctor imposed lifting restriction would cause her to fail this required physical, but they agreed to allow Jackson to call and send a fax to Dr.

---

[1]The Magistrate Judge further noted that, with respect to a disability discrimination claim, an individual is deemed to be qualified if he or she can perform the essential functions of the job with or without a reasonable accommodation, and that, for an employer to be liable, the employer must know or have reason to know of the disability. (Docket Entry No. 189 at 4 & Docket Entry No. 214 at 9).

2

> > Dmochowski at Vanderbilt University in Nashville to request that he eliminate Jackson's lifting restriction. This fax was sent, and Jackson testified at deposition that she was told that she could wait by the fax machine for Dr. Dmochowski to respond (Docket Entry No. 169-1, p. 21).
> >
> > According to Jackson's deposition testimony, later on April 25, 2007, Tracey Blocker, a Swift employee, informed Jackson that she had "flunked" the physical and that she would need to leave. Jackson asserts that she was treated rudely and that a female employee took her by the arm and escorted her to the door. According to Jackson's testimony, she "became so mad [she] couldn't even see straight."
> >
> > Jackson testified that she
> >
> > > started screaming at that point outside the exterior of that building. I let everybody know what kind of pain I was in. And I started screaming for rights to re-enter. I started banging on doors.
> >
> > (Docket Entry No. 169-1, p. 23).
>
> (Docket Entry No. 189 at 6-7).[2]

Based upon this evidence, the Magistrate Judge concluded that Plaintiff could not establish a *prima facie* case because she could not show that she was qualified to train as a truck driver for Swift Transport. The Magistrate Judge also opined that, even if Plaintiff could show she was qualified, Swift Transport articulated a non-discriminatory reason for its action – Plaintiff's "failure to complete a physical assessment that required her to lift at least 75 pounds." Id. at 7.

As for Plaintiff's retaliation claim, the Magistrate Judge observed that Title VII makes it an unlawful employment practice for an employer to discriminate against any individual "because he [or she] has opposed any practice made an unlawful practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Magistrate Judge determined that Plaintiff's retaliation claim failed because she could not show that Swift Transport

---

[2]In an accompanying footnote, the Magistrate Judge observed that Dr. Dmochowski did not respond to the fax from Plaintiff until May 4, 2007, nine days later and, even then, he did not clearly eliminate the previous 50-pound lifting restriction placed on Plaintiff. (Docket Entry No. 189 at 7 n. 2).

3

was aware of Plaintiff's previous discrimination charges (Plaintiff has filed numerous other discrimination cases, some in this Court), or that any such knowledge influenced its decision not to allow Plaintiff to participate in the training program. (Docket Entry No. 214 at 13).

As indicated, Plaintiff has filed objections to the R & Rs. This Court has reviewed the entire record in this matter, including the arguments made by the parties, and finds that the Magistrate Judge was correct in his conclusion that Plaintiff's Motion for Summary Judgment should be denied, Defendants' cross-motion should be granted, and this case should be dismissed. In reaching that conclusion, the Court has considered Plaintiff's Objections to the R & Rs and overrules those objections for the reasons set forth below.

A. **Standard of Review**

Where a party files timely objections to a R & R which addresses a dispositive motion, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

B. **Plaintiff's Objections (Docket Entry No. 202) to R &R Recommending Denial of Her Motion for Summary Judgment (Docket Entry No. 189)**

Plaintiff first objects by arguing she is entitled to summary judgment because her affidavit of indigency is true and her Complaint passed frivolity review. While this may be true, it does not show Plaintiff is entitled to summary judgment.

A Complaint is subject to dismissal under 28 U.S.C. § 1915 if it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). It does not take a

4

lot to pass frivolity review because a "complaint is frivolous only if the legal theories raised in the complaint are indisputably meritless or if the factual contentions are fantastic or delusional." Brown v. Bargery, 207 F.3d 863, 866 (6th Cir. 2000). Conversely, summary judgment imposes a much heavier burden on Plaintiff because she must show that, even construing the evidence in Defendants' favor, there are no genuine issues of material fact and that Plaintiff is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex v. Catrett, 477 U.S. 371, 325 (1986). Plaintiff does not come close to that showing, notwithstanding the fact that her Complaint was deemed not to be frivolous.

Plaintiff next raises several objections relating to the facsimile which was sent to Swift Transport by Dr. Roger Dmochowski ("Dr. Dmochowski"), Plaintiff's urologist, on May 4, 2007. Plaintiff claims this facsimile clearly shows she was capable of the lifting requirements imposed by Swift Transport and that the Magistrate Judge erred in writing that Dr. Dmochowski "fails to make any explicit reference to the 50-pound lifting restriction or his willingness to cancel or modify it" in the facsimile. (Docket Entry No. 214 at 7).

Directly above what appears to be Dr. Dmochowski's signature is the following typed statement:

> I verify this individual's medical condition is stable and he/she is in no known imminent risk of incapacitation or other symptoms that affect his/her ability to safely operate a commercial motor vehicle. This individual is medically capable of safely driving a commercial vehicle. I also understand DOT guidelines require a minimum of 6 month office visits for patients with chronic diseases. I am enclosing pertinent documentation, if applicable, to support this statement. Please include the following documentation to support this statement:

(Docket Entry No. 169-3). Directly below the foregoing, but above the signature line, is the handwritten notation: "need current [crossed-out word] allowing pt. to perform activities without

5

any limitation, must lift 85 lbs & drive vehicle (18 wheeler) § [sic] limitation. (Id.). However, no such documentation was provided.

Even giving Plaintiff the benefit of the doubt, the facsimile, as signed by Dr. Dmochowski and without supporting documentation, establishes only that Plaintiff was capable of driving a truck, not that she was capable of exceeding the 50-pound limit previously imposed by Dr. Dmochowski. Moreover, the facsimile was not sent to Swift Transport until nine days after Swift Transport made the decision to remove Plaintiff from the training class. The Magistrate Judge did not err in concluding Plaintiff failed to show she was entitled to summary judgment on any of her claims based upon the facsimile from Dr. Dmochowski.

Plaintiff argues that "all applicants" with "known disabilities pass Swift's medical tests." (Docket Entry No. 202 at 7). However, she offers no evidence to support that conclusion and an unsubstantiated allegation is not considered in determining whether a party is entitled to summary judgment.

Relatedly, Plaintiff claims that Swift Transport decided not to hire her when they "learned about [Plaintiff's] disabilities, her medical care plan, and her surgeries at Vanderbilt." (Id.). Admittedly, Swift Transport knew that Plaintiff was "disabled" to the extent she was medically restricted from lifting more than 50 pounds. But mere knowledge of that condition does not mean Plaintiff has proven her case because she must show that, notwithstanding her "disability," she was otherwise qualified to perform the essential functions of the position, with or without a reasonable accommodation. Nance v. Goodyear Tire and Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008). Plaintiff, as "[t]he disabled individual[,] bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable," Smith v. Ameritech, 129 F.3d 857, 866

6

(6th Cir. 1997)(italics in original), but Plaintiff has not done so in this case. See, Willard v. Potter, 264 Fed. Appx. 485, 486 (6th Cir. 2004)("Implicit in the plaintiff's duty to demonstrate that the employer failed to provide the necessary accommodation is the duty to identify the necessary accommodation").

Plaintiff also claims she already had a commercial driver's license and had passed other companies' medical requirement when she presented herself to Swift Transport. Presumably Plaintiff presents this argument to show that she is entitled to summary judgment or that Swift Transport's stated reason for not hiring her is false. However, the fact that Plaintiff may have possessed a license to operate a tractor/trailer and/or had previously passed other companies' medical restrictions says nothing about whether Plaintiff could lift 75 pounds or 85 pounds which are requirements for a Swift Transport driver.

Plaintiff also makes unsubstantiated attacks on the Magistrate Judge. Plaintiff states she "has no tolerance for unscrupulous judges making unscrupulous judgments" and that in allegedly misconstruing Dr. Dmochowski's facsimile, the Magistrate Judge engages in "verbal hullicinatory [sic] jargon." (Docket Entry No. 201 at 9). These are not proper objections to the R & R, have no factual basis, and constitutes conduct by Plaintiff which the Court has disapproved of in the past. See, Docket Entry No. 177 at 4 ("unsupported and disparaging comments made by the Plaintiff . . . do nothing to show that the Magistrate Judge either clearly erred or acted contrary to law and the Court finds otherwise"); Docket Entry No. 178 at 3 ("Magistrate Judge Bryant read Plaintiff's often-difficult to discern filings, gave thought to Plaintiff's requests, exercised his discretion in an even-handed manner, and exhibited extreme patience with Plaintiff, notwithstanding the large number of filings made by Plaintiff and her repeated attacks on Magistrate Judge Bryant's character and

7

judgment"); Docket Entry No. 213 at 2-3 (listing numerous "*ad hominem* attacks" on the Magistrate Judge and undersigned, and finding them to be without merit).

Finally, Plaintiff asserts Swift Transport "did not retest [Plaintiff] as promised to Plaintiff, to VTC[3] and to Vanderbilt." (Docket Entry No. 202 at 10). As with most of her Objections and her filings in support of, and in opposition to, the summary judgment motions, Plaintiff fails to provide any evidentiary support for this statement. While *pro se* filings are to be liberally construed, "the Supreme Court has 'never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." West v. Adecco Employment Agency, 124 Fed. Appx. 991, 992 (6th Cir. 2005); see, Frame v. Superior Fireplace, 74 Fed. Appx. 601, 603 (6th Cir. 2003)("While *pro se* litigants are afforded significant leeway . . . those who proceed without counsel must still comply with the procedural rules that govern civil cases.").

This Court has considered all of the Objections (Docket Entry No. 202) raised by the Plaintiff to the R & R (Docket Entry No. 189) and finds them to be without merit. The Court also finds that the Magistrate Judge was correct in recommending that Plaintiff's Motion for Summary Judgment (Docket Entry No. 145) be denied.

**B. Plaintiff's Objections (Docket Entry No. 223) to R & R recommending Defendants be Granted Summary Judgment (Docket Entry No. 214)**

In her Objections to the R & R which recommends that summary judgment be granted in favor of Swift Transport, Plaintiff sets forth many of the same arguments she presented in her Objections to the R & R recommending denial of her Motion for Summary Judgment. For the reasons already stated, those Objections are overruled.

---

[3]"VTC" apparently is a reference to Volunteer Training Center where Plaintiff previously underwent driver training.

Plaintiff also ramps up her attacks on the Magistrate Judge, telling him to "wake up and smell the coffee!" (Docket Entry No. 223 at 6), alleging that he presents "facts illegally and with fraudulent activity," (id.) warning him to "get the facts straight" and stop "lying and hedging," (id. at 7, 9 & 11), claiming that he gets the "facts twisted up and present[s] Foolish dismissals" (id. at 13), and that he engages in assorted "falsehoods" (id. at 19), among other things. For such alleged misconduct, Plaintiff repeatedly insists that she is entitled to 125 billion dollars, and a like amount from Swift Transport's counsel for similar alleged misconduct. Again, these are not proper Objections and, in any event, are unfounded accusations worthy of no further comment.

Plaintiff claims she is entitled to summary judgment because she met the deadline for such filings, but "[t]here was no depository [sic] motions presented to the courts by defendant or its legal counsel as mandated by the deadline date to produce." (Docket Entry No. 223 at 1-2). While Swift Transport may not have met the deadline for initially set in the Case Management Order for filing Motions for Summary Judgment (Docket Entry No. 48), it did receive an extension of time to file such a motion by February 15, 2010 (Docket Entry No. 176) and Swift Transport's Motion for Summary Judgment was filed on that date. Further, while Plaintiff's Motion for Summary Judgment may have been filed "well in advance of defendant's . . . presentation of their summary judgment," and while Plaintiff may have "beat every deadline the courts put before her" (Docket Entry No. 223 at 3 & 4), the question is not when the motions were filed, but whether the motions and supporting documentation showed that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law.

Plaintiff next claims the Magistrate Judge presented the "facts illegally" and needs to "wake up and smell the coffee" because he references the Millington, Tennessee Swift Transport driver

9

training academy, but Plaintiff "was never a part of or a party to" that facility. (Id. at 6). The Magistrate Judge did not say that Plaintiff was a "part" of the training program at Millington, only that Millington is where the actual driver training would occur if Plaintiff successfully completed her medical examination and physical assessment which were administered at the Swift Transport terminal in Memphis, Tennessee (Docket Entry No. 214 at 4-5). These are correct representations of the facts presented and are supported by the evidentiary record.

Plaintiff next claims that Jessica Rhodes, a medical examiner at the Swift Transport terminal, told Plaintiff that, notwithstanding the 50 pound weight restriction, Plaintiff would be granted a "one year medical clearance . . . without retesting." (Docket Entry No. 223 at 8). Again, Plaintiff provides no evidentiary support for this assertion and it is entitled to no weight in considering the cross-motions for summary judgment. Moreover, the assertion contradicts Plaintiff's objection (noted earlier) that she was told by Swift Transport she would be allowed to retest, since a retest would not be necessary if the lifting requirements were waived.

Plaintiff also claims the Magistrate Judge erred by stating that Dr. Dmochowski did not send a facsimile until May 4, 2007, nine days after the request was made on April 25, 2007. Plaintiff points to the header on the facsimile which contains both dates and argues that this proves the facsimile was sent to Swift Transport on April 25, 2007 and May 4, 2007. However, it is clear that the first date on the facsimile, April 25, 2007, denotes when Swift Transport faxed Dr. Dmochowski's office and the second date, May 4, 2007, is when the facsimile was sent back to Swift Transport from Dr. Dmochowski's office at "Vanderbilt Urology." (Docket Entry No. 187-3 at 8). Plaintiff further claims the Magistrate Judge erred by rejecting her "Torture Victim Act" claim. The Magistrate Judge did so because that claim was not specifically pled and further because

10

the Torture Victim Protection Act of 1991, Pub. L., 102-256, Mar. 12, 1992, 106 Stat. 73, allows for the filing of civil suits in district court against individuals who, acting in an official capacity for any foreign nation, subjects another to torture. Contrary to Plaintiff's contention, Tennessee is not "a foreign nation of illegal operation." (Docket Entry No. 223 at 14).

Plaintiff next claims Swift Transport engaged in retaliation because, in support of the Motion for Summary Judgment, counsel attached Jackson v. Salvation Army, Case No. 6-CV-00095 (W.D. Ky. 2006), an unpublished decision which dismissed Plaintiff's disability discrimination suit against the Salvation Army. Counsel for Swift Transport cited the Salvation Army case and numerous other cases for the proposition that "Plaintiff has a demonstrated history of filing similar employment discrimination complaints." (Docket Entry No. 188 at 2 n.3). However, counsel's citation of such cases, long after the employment action complained about, does not prove that Swift Transport knew about Plaintiff's past history when it made its decision not to allow Plaintiff to continue in the training program, or that any such knowledge played a role in the decision.

Finally,[4] Plaintiff raises a couple of arguments relating to her status as an "excommunicated Mormon." She claims that "Mormons run and operate Swift Transport," and that "[a]n excommunicated Mormon is dog meat to a Mormon run business." (Docket Entry No. 223 at 22). Plaintiff also claims Swift Transport knew she was an excommunicated Mormon and "used that as weaponery [sic] to seal her religious fate with a discriminatory termination in vindication." (Id. at 23, emphasis in original).

---

[4]In her Objections, Plaintiff also raises several arguments in which she claims the Magistrate Judge and/or counsel for Swift Transport violated the "sealment" Order in this case. The Court discusses the "sealment" issue in the next section relating to "Plaintiff's Motion to Compel Sealments."

11

While Plaintiff has presented letters which indicate that she has left the Mormon church, she submits absolutely no evidence that excommunicated Mormons are treated "like dog meat" by other Mormons, or by Swift Transport. Moreover, Plaintiff provides no evidentiary support for her contention that Swift Transport was aware that she was an excommunicated Mormon. In her deposition, Plaintiff testified to the opposite by stating that she "didn't breathe a word" to anyone at Swift Transport about being an excommunicated Mormon and further testified that "when asked about a religious preference, I always say Southern Baptist[.]" (Pf. Depo. at 443-444).

This Court has considered all of the Objections (Docket Entry No. 223) raised by the Plaintiff to the R & R (Docket Entry No. 214) and finds them to be without merit. The Court also finds that the Magistrate Judge was correct in recommending that Swift Transport's Motion for Summary Judgment (Docket Entry No. 186) be granted.

## II. **PLAINTIFF'S "MOTION TO COMPEL SEALMENTS"**

Plaintiff's "Motion to Compel Sealments" (Docket Entry No. 222) relates to Exhibit 3 to Swift Transport's Statement of Undisputed Material Fact (Docket Entry No. 187-3). Exhibit 3 consists of an Affidavit from Donald Diggins, the Human Resources Compliance Manager for Swift Transport, and attached copies of Plaintiff's employment application, Swift Transport's "Fitness Determination" form for Plaintiff, and the facsimile which was sent to, and returned by, Dr. Dmochowski.

At the time the Affidavit and attachments were filed, counsel endeavored to comply with Fed. R. Civ. P. 5.2 which requires redaction of such things as all but the last four digits of an individual's social security number and the year of an individual's birth. However, counsel subsequently discovered that, through inadvertence, the redactions which were made did not redact

12

all of the information required by the Rule. This prompted counsel to file a "Motion to Place Exhibit 3 to Defendant's Motion for Summary Judgment Under Seal" (Docket Entry No. 190), which the Court granted (Docket Entry No. 206).

Plaintiff argues that, in light of the Order requiring Exhibit 3 to be sealed, both the Magistrate Judge and Swift Transport's counsel erred in referencing her application, the "Fitness Determination" form, and/or the facsimile in relation to the pending Motions for Summary Judgment. Plaintiff asserts that the references to those documents are "illegal," and were done to "intentionally harm" Plaintiff. (Docket Entry No. 222 at 2). Plaintiff argues she is entitled to $125 billion dollars for each allegedly improper reference to those documents.

Plaintiff ignores what led to counsel's request that the documents be placed under seal, and misconstrues the purpose behind the Order which placed Exhibit 3 under seal. Exhibit 3 was sealed to prevent the availability of potentially identifying information in the public records of the Court. Exhibit 3 was not sealed because citation to Plaintiff's application, the "Fitness Determination" form, and/or the facsimile would be improper. Further, when citing the documents in Exhibit 3, neither the Magistrate Judge nor counsel referenced the information sought to be protected by Fed. R. Civ. P. 5.2. Plaintiff's "Motion to Compel Sealments" is without merit and will be denied.

### III. CONCLUSION

On the basis of the foregoing, the Reports and Recommendations (Docket Entry Nos. 189 & 214) will be accepted and approved, and Plaintiff's Objections thereto (Docket Entry Nos. 204 & 223) will be overruled. Plaintiff's Motion for Summary Judgment (Docket Entry No. 145) will be denied, Defendants' Motion for Summary Judgment (Docket Entry No. 186) will be granted, and

this case will be dismissed with prejudice. Finally, Plaintiff's "Motion to Compel Sealments" (Docket Entry No. 222) will be denied.

      An appropriate Order will be entered.

                                            ROBERT L. ECHOLS
                                            UNITED STATES DISTRICT JUDGE

14

Case 3:08-cv-00743 Document 231 Filed 04/09/10 Page 14 of 14 PageID #: 3780